
# UNITED STATES BANKRUPTCY COURT

# IN AND FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| In re:<br>FRANCISCO J. ESPINOSA,<br>        Debtor.<br>_____ | Chapter 13<br>Case No. 4:92-bk-03819-EWH |
| FRANCISCO J. ESPINOSA,<br>        Plaintiff,<br>v.<br>UNITED STUDENT AID FUNDS, INC.,<br>        Defendant.<br>_____ | Adversary No. 4:10-ap-01202-EWH<br><br>**MEMORANDUM DECISION** |

## I. INTRODUCTION

The Ninth Circuit has issued a remand order to this Court to determine if sanctions should be imposed against a student loan creditor for a willful violation of the discharge injunction. For the reasons explained in the balance of this Memorandum, sanctions will be imposed.

## II. FACTS AND PROCEDURAL HISTORY

This case has a long history. In 1992, Francisco Espinosa ("Espinosa") filed a Chapter 13 plan ("Plan"), which addressed a single debt – his student loan ("Loan"). The Plan provided for the payment of the Loan's principal balance of $13,250 over the Plan term, but not for the payment of approximately $4,000 in interest, which was to be

discharged if Espinosa fully performed the Plan ("Plan Discharge"). No adversary proceeding was filed to discharge the interest on the Loan and, therefore, there was no § 523(a)(8)[1] determination that repaying the full balance of the Loan would create an undue hardship for Espinosa.

United Student Aid Funds, Inc. ("USA Funds") filed a proof of claim for the full balance of the Loan, but did not file an objection to the Plan. An order was entered confirming the Plan in May 1993 ("Confirmation Order"). The Chapter 13 Trustee filed and served on USA Funds an objection to its proof of claim because the $17,000 amount differed from the $13,000 amount in the Plan. USA Funds did not respond to the Trustee's objection. As a result, the amount of USA Funds' allowed claim was the amount set forth in the Plan, and that was the amount Espinosa paid over the Plan term.

Espinosa fully performed the Plan and, in May 1997, a standardized Chapter 13 discharge form ("Discharge Form") was issued by the Clerk of the Arizona Bankruptcy Court. Paragraph 1(c) of the Discharge Form excepted student loans "as specified in 11 U.S.C. §§ 523(a)(8)." Espinosa's case was closed in June 1997.

In 2000, the U.S. Department Education ("USDE"), and/or collection agents retained on its behalf, began collection efforts – seeking repayment of the interest portion of the Loan, which had grown to over $13,000 as a result of the accrual of interest.[2] Thereafter, a number of Espinosa's tax refunds were intercepted as part of the collection efforts. Espinosa and his counsel sent correspondence to the collectors – notifying them that the Loan had been fully discharged under the terms of the confirmed

---

[1] Unless otherwise indicated, all chapter and section references in the text are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532. All "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037.

[2] Sometime in 2000, USA Funds assigned the Loan to the USDE for collection. USDE was the guarantor of the Loan.

2

Plan. The collectors responded that the Loan was not discharged unless there had been a court determination of undue hardship, and because there was no such order in Espinosa's case, collection efforts would continue.

In 2003, Espinosa reopened his case and filed a "Motion for Violation of the Discharge, Sanctions and Damages" ("Motion") seeking to enjoin further collection efforts and for damages. USA Funds opposed the Motion, asserting, under a number of different theories, that the Confirmation Order was void under Rule 60(b)(4). Prior to the hearing on the Motion, all intercepted funds were returned to Espinosa.

In August 2004, the Court entered an order finding that the Plan Discharge was effective and granting Espinosa's request that all collection efforts cease ("2004 Order"). Espinosa's request for sanctions was denied. USA Funds appealed the 2004 Order to the District Court. Espinosa did not cross appeal the denial of sanctions. The District Court reversed. Espinosa appealed to the Ninth Circuit. After a limited remand to this Court to correct the clerical error created by the entry of the Discharge Form, which was inconsistent with the Plan Discharge, the Ninth Circuit reversed the District Court in Espinosa v. United Student Aid Funds, Inc._, 553 F.3d 1193 (9th Cir. 008). In its decision, the Ninth Circuit held that the Loan was discharged and remanded ("Remand Order") the case to this Court:

> [F]or reinstatement of the order enforcing the discharge injunction, and for a determination whether the creditor[3] acted willfully in violating the injunction under the standard, we announced in ZiLOG, Inc. v. Corning (In re ZiLOG, Inc.), 450 F.3d 996 (9th Cir. 2006).

USA Funds appealed to the Supreme Court. In March 2010, the Supreme Court issued its opinion in United Student Aid Funds, Inc. v. Espinosa, 130 S.Ct. 1367 (2010). In its decision, the Supreme Court rejected USA Funds' 60(b)(4) arguments, but disagreed with the Ninth Circuit that bankruptcy courts should confirm so-called

---

[3] USA Funds is the only creditor referred to in the Ninth Circuit decision.

3

"discharge by declaration" provisions in Chapter 13 plans if a properly noticed student loan creditor does not object to confirmation. Id. at 1379-80. Notwithstanding that disagreement, the Supreme Court affirmed the Ninth Circuit.

In May 2010, Espinosa filed a Motion for Sanctions against USA Funds and the USDE for willful violation of the Plan Discharge ("Sanctions Motion"). The Sanctions Motion sought an award of attorneys' fees incurred in litigation, including appeals to enforce the Plan Discharge and for Espinosa's emotional distress resulting from the violation of that injunction. The Sanctions Motion included affidavits from Espinosa and his counsel in support of a request for damages consisting of approximately $30,000 for Espinosa's emotional distress and over $300,000 for attorneys' fees. Espinosa did not request punitive damages. Because of procedural due process concerns, Espinosa was required to open a separate adversary proceeding. The Sanctions Motion was thereafter treated as a complaint. Motions to dismiss were filed by the USDE and USA Funds. In August 2010, with Espinosa's consent, the USDE was dismissed.

After several hearings and an unsuccessful attempt at settlement, the Court requested briefs on whether the Supreme Court's decision affected the scope of the Remand Order. In January 2011, an order was issued finding that the Supreme Court's decision had not changed the scope of the Remand Order and that this Court was still required to determine if USA Fund's violation of the Plan Discharge was sanctionable.

In February 2003, a status hearing was held to determine if either party wanted to present evidence. Both parties agreed that no further evidence was required. Each party has now submitted a final brief on the issue, and the matter is ready for decision.

4

## III. JURISDICTION

The matter is before the Court pursuant to the Remand Order. The Court has jurisdiction to enforce a discharge injunction pursuant to 11 U.S.C. § 105(a). ZiLOG, Inc., 450 F.3d at 1007.

## IV. ISSUES

1. Whether the relief Espinosa seeks is barred because he did not cross-appeal the denial of sanctions in the 2004 Order;
2. Whether USA Funds' violation of the Plan Discharge was willful if it did not know or had a good faith belief that it did not apply to student loan debt;
3. Whether Espinosa's legal fees, incurred in litigating the enforceability of the Plan Discharge are recoverable as actual damages;
4. Whether Espinosa's proposal of the Plan, which provided for a discharge of the Loan without any § 523(a)(8) determination, bars him from recovering damages because of bad faith or unclean hands.

## V. DISCUSSION

**Introduction**

The Court must decide the issues presented in the context of the Remand Order. An inferior court *must* comply with the mandate of the appellate court. Firth v. United States, 554 F.2d 990, 993-94 (9th Cir. 1977) (emphasis added). A lower court is not free to review a mandate "even for apparent error," In re Sanford Fork & Tool Co., 160 U.S. 247, 255 (1895). This Court may not decide an issue previously decided on appeal "explicitly or by necessary implication." Liberty Mut. Ins. Co. v. E.E.O.C., 691 F.2d 438, 441 (9th Cir. 1982). Therefore, the court is not writing on a blank slate

5

but instead is deciding the issues in the context of what has already been decided. The Ninth Circuit has found:

1. The Plan Discharge applied to USA Funds;
2. USA Funds violated the Plan Discharge;
3. That if the violation was willful, sanctions should be imposed sufficient to make Espinosa whole.

Espinosa, 553 F.3d at 1205. Keeping those findings in mind, the Court turns to the issues.

### A. The Court May Not Decide if Espinosa's Failure to Appeal the 2004 Order Bars Relief

USA Funds argues that *res judicata*[4] precludes Espinosa from seeking sanctions because he failed to appeal the 2004 Order's denial of his request for sanctions. The doctrine of claims preclusion prevents parties from relitigating a claim where there has been a final judgment on the merits, involving the same parties, on the same cause of action; and, the party seeking relief had a full opportunity to litigate the claim. Montana v. United States, 440 U.S. 147, 155, 99 S.Ct. 970, 974-75 (1979). Espinosa argues that claims preclusion does not apply to any claim for sanctions that arose after the 2004 Order because those claims did not exist when sanctions were denied.

At several of the hearings held in this case, the Court indicated that it believed claims preclusion possibly barred recovery. After reviewing the briefs and legal authority cited by the parties, the Court concludes it may not decide the issue. USA Funds argues that even though the Remand Order directs this Court to determine if sanctions should be awarded, because Espinosa did not cross-appeal the 2004 Order, the issue of sanctions "was not properly before the Ninth Circuit Court of Appeals."

---

[4] The Supreme Court treats the Restatement (Second) of Judgments as an authoritative statement of federal res judicata doctrines and has applied the Restatement's substitution of "claims preclusion" for "res judicata." In re George, 318 B.R. 729, 733 (9th Cir. BAP 2004).

6

(DE #32, p. 5). The suggestion is that the Ninth Circuit does not have the authority to issue a remand order concerning an issue which was not the subject of the appeal. But, remand orders are not subject to review by the court charged with carrying out their terms. This Court cannot deviate from the mandate issued by the Ninth Circuit. <u>Briggs v. Penn. R.R.</u>, 334 U.S. 304, 306 (1948); <u>see also</u> <u>In re Roberts</u>, 846 F.2d 1360, 1363 (Fed. Cir. 1988) ("Unlike the authority to reconsider its *own* rulings, a district court is without choice in obeying the mandate of the appellate court"). Were the Court to decide that claims preclusion applied, it would effectively eviscerate the Remand Order. The authorities cited by Espinosa make it clear that such a result is forbidden.

      B.     <u>Because USA Funds Knew the Plan Discharge Applied, its Violation of the Injunction was Willful</u>

USA Funds argues that its violation of the Plan Discharge was not willful because it did not know it applied to the Loan until an amended discharge order was entered in 2008 to correct the clerical error created by the Clerk's issuance of the Discharge Form. The facts simply do not support that argument. While USA Funds did not receive a copy of the Confirmation Order, it is undisputed that it received the Plan and the Chapter 13 Trustee's objection to its proof of claim. It also received correspondence from Espinosa and his counsel after collection efforts began alerting it to Espinosa's position that the collection efforts violated the Plan Discharge.

It is clear that USA Funds was on notice that the Plan discharged the Loan from the date the Plan was noticed to creditors. Even assuming that USA Funds had a good faith belief that, notwithstanding the terms of the Plan, Espinosa could not discharge the Loan without obtaining an undue hardship judgment in a separately filed adversary, once the 2004 Order was entered, USA Funds knew the Plan Discharge was effective. As noted by the Ninth Circuit, USA Funds' belief that it would prevail on its Rule 60(b) arguments is of "no consequence" in the willfulness determination. "That the creditor

7

may have believed that the discharge was inappropriately entered, or that it could be set aside under Rule 60(b) is of no consequence." Id. Espinosa, 553 F.3d at 1205 n.7.

USA Funds further argues that the litigation and appeals regarding the applicability of the discharge were not "collection actions." But, that is exactly why USA Funds was litigating with Espinosa–so that collection actions could continue. Litigation, including appeals, opposing a discharge or stay injunction is an effort to collect and, therefore, a violation of the discharge injunction. See In re Roman, 283 B.R. 1, 11-15 (9th Cir. BAP 2002) (involving automatic stay violation); see also In re Price, 103 B.R. 989, 996 (Bankr. N.D. Ill. 1989).

### C. Espinosa's Legal Fees Incurred on Appeal are Actual Damages

USA Funds relies on Sternberg v. Logan T. Johnson (In re Sternberg), 595 F.3d 937 (9th Cir. 2009) as authority for the proposition that Espinosa cannot recover attorneys' fees incurred on appeal. The holding of Sternberg does not focus on whether the fees incurred involved an appeal, but rather on whether the fees were incurred in obtaining sanctions. Sternberg stands for the proposition that the "American Rule," which requires that each side bear its own fees and costs, applies to litigation where a debtor seeks sanctions for a stay violation. Sternberg explicitly recognizes that attorneys' fees and costs are recoverable to remedy a stay violation. Id. at 946.

Because USA Fund's litigation and appeals of the 2004 Order were an attempt to collect a discharged debt, the violations of the discharge injunction did not end until the Supreme Court issued its opinion in 2010. The Sanctions Motion does not seek recovery for fees incurred in its prosecution, so the holding in Sternberg that barred such fees does not apply. Furthermore, the Remand Order refers to ZiLOG where the imposition of sanctions was, as here, made under the court's civil contempt powers. See ZiLOG, 450 F.3d at 1007. Sternberg limits the amount of attorneys fees and costs that a court can award for violations of the automatic stay under § 362(k)(1). The

Sternberg court, however, expressly stated that it was not considering the civil contempt authority of the court and that its opinion should not be construed as limiting the availability of contempt sanctions, including attorneys' fees, under that authority. 595 F.3d at 946 n.3; see also In re Feagins, 439 B.R. 165, 179, n.2 (Bankr. D. Haw. 2010).

### D. The Doctrines of Bad Faith and Unclean Hands Do Not Apply

USA Funds points to an exchange during oral argument at the Supreme Court and to the Supreme Court's decision which condemns the use of "discharge by declaration" as a finding by the Supreme Court that Espinosa's conduct in proposing the Plan was sanctionable. Espinosa, 130 S.Ct. at 1380-82. The Supreme Court's opinion, however, contains no specific finding that Espinosa or his counsel were guilty of bad faith. The scope of the Remand Order is to determine if USA Funds' violation of the Plan Discharge was willful and, if so, to award Espinosa damages "to the extent necessary to make him whole." It is unlikely, therefore, that the Court has the authority to make new factual findings completely outside of the scope of the Remand Order. Even if this Court could make such findings, it would not make a bad faith finding against Espinosa or his counsel. In the 2004 Order, I refused to impose sanctions on USA Funds in part because the law regarding "discharge by declaration" has been in a state of flux since the late 1990's. There was a split of authority among the circuits about whether the practice was permitted. Lawyers, as advocates, work hard to provide the best result possible for their clients. Here, Espinosa's lawyer did just that. The Court sees no bad faith by Espinosa or his counsel for pursuing a result which was not definitively found to be improper until the Supreme Court issued its decision.

9

Case 4:10-ap-01202-EWH    Doc 35    Filed 06/08/11    Entered 06/09/11 09:41:39    Desc
Main Document - Memorandum/Opinion    Page 9 of 11

# VI. CONCLUSION

Under the holding in ZiLOG, USA Funds is liable for damages for willful violation of the discharge injunction because: (1) the Plan Discharge discharged the Loan; (2) USA Funds knew of the existence and effect of the Plan Discharge no later than the entry of the 2004 Order; (3) USA Funds intended to litigate its 60(b)(4) defenses; and (4) that litigation was an attempt to collect a discharged debt. USA Funds has not contested any of the facts underlying Espinosa's request for damages. The Court, therefore, finds that Espinosa has met his burden of demonstrating sanctions are justified. See Feagins, 439 B.R. at 177, citing In re Bennett, 298 F.3d 1059, 1069 (9th Cir. 2002).

Accordingly, Espinosa is entitled to actual damages including attorneys' fees and costs from the August 12, 2004 date of the 2004 Order through March 23, 2010 the date of the Supreme Court's mandate. Counsel for Espinosa is directed to lodge an appropriate form of judgment.

Dated and signed above.

Notice to be sent through the
Bankruptcy Noticing Center "BNC"
to the following:

Francisco J. Espinosa
2930 North 38th St. #11
Phoenix, AZ 85018

Michael J. Meehan, Esq.
3938 East Grant Rd. #423
Tucson, AZ 85712

Daniel J. Rylander, Esq.
Robinson & Rylander, P.C.
4340 North Campbell Ave., Suite 266
Tucson, AZ 85718

Madeleine C. Wanslee, Esq.
Gust Rosenfeld, P.L.C.
One East Washington #1600
Phoenix, AZ 85004-2553

10

Elizabeth A. Wilson, Esq.
U.S. Attorneys Office
405 West Congress #4800
Tucson, AZ 85701-5040

11